**SIGNED THIS: January 31, 2020**

_____
**Mary P. Gorman
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re | ) | |
|---|---|---|
| | ) | Case No. 19-70537 |
| KEITH L. TATRO, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |

# O P I N I O N

Before the Court is the United States Trustee's Motion for Disgorgement of Fees seeking a review of the fees and costs charged by Attorney Michael Meyers and Ostling & Associates, LTD, for the reopening of this case and for filing a motion to avoid a lien with respect to the Debtor's personal property. For the reasons set for herein, the Motion for Disgorgement of Fees will be granted.

## I. Factual and Procedural Background

Keith L. Tatro ("Debtor") filed his voluntary petition under Chapter 7 on April 11, 2019. He was represented in the filing by Attorney Michael Meyers of Ostling & Associates, LTD ("Ostling Firm"). The Debtor's case was uneventful. He filed all required documents, attended his meeting of creditors, cooperated with the case trustee, and received his discharge on July 17, 2019. The case was closed on August 2, 2019.

On October 23, 2019, the Debtor, through Attorney Meyers, filed a motion to reopen his case for the purpose of filing a motion to avoid lien. On the same day, a motion to avoid the lien of Tower Loan of Illinois LLC ("Tower Loan") on personal property of the Debtor, including several lawnmowers, a variety of tools, several televisions, and a DVD collection, was also filed by Attorney Meyers. The motion claimed that Tower Loan's lien on the items was non-purchase money and avoidable. Attorney Meyers also filed an amended fee disclosure stating that the Debtor had paid him $440 in fees plus the reopening filing fee of $260. After a hearing, the case was reopened. After further notice to Tower Loan, and in the absence of any objection, its lien was avoided.

While the lien avoidance motion was pending, the United States Trustee ("UST") filed a Motion for Disgorgement of Fees ("Motion for Disgorgement") asking the Court to examine the Debtor's financial transactions with his attorney and requesting that Attorney Meyers and the Ostling Firm be ordered to disgorge the $700 paid by the Debtor to reopen the case and avoid the lien of Tower Loan. In the Motion for Disgorgement, the UST asserts that Attorney Meyers, as a regular bankruptcy practitioner, should have known that loan companies such as Tower

Loan almost always take a non-purchase money security interest in a borrower's personal property as part of a loan transaction. The UST further alleged that the Illinois Secretary of State maintains a user-friendly, free-access database that can be searched in a matter of seconds to find information about whether financing statements have been filed against a particular debtor. The UST pointed out that the original fee disclosure filed by Attorney Meyers reflected fees of $800 and that the avoidance of liens was included in the scope of services to be rendered. Accordingly, the UST asserted that charging an additional $700 to avoid the lien of Tower Loan after letting the case close was unreasonable.

Attorney Meyers responded to the Motion for Disgorgement by placing the blame for the failure to avoid the lien during the time the case was originally open on the Debtor. He said that the Debtor was asked about secured claims during the intake process and did not identify Tower Loan as a secured creditor. He also asserted that attorneys have a right to rely on information provided by their clients and "should not be expected to do searches to catch errors or omissions by a client[.]" Mr. Meyers wholly denied any responsibility on his part to review documents or information provided by the Debtor for possible errors. He repeatedly asserted that the issue was related to the fee arrangement between the Debtor and the Ostling Firm. According to Mr. Meyers, if the Debtor did not pay for a lien avoidance motion, then the Ostling Firm had no duty to look into the filing of a lien avoidance motion, even if the Debtor needed the avoidance motion filed to achieve the results he expected when he filed his bankruptcy case.

Attached to the response from Attorney Meyers were six exhibits. Exhibit A consists of one page of what is apparently an intake interview document. The

handwriting is reported to be that of Attorney Ostling and includes an illegible answer to the question that asks whether the Debtor had any "fast cash or small loans." The Debtor must have said that he did have such loans because something was written by Mr. Ostling in the space allotted to describe the loan, but what was written is indecipherable. The question on the document about whether the fast cash or small loan is secured is marked "No." The printed form cautions the interviewer, however, to "WATCH MOTION TO AVOID!" Attorney Meyers says that this exhibit establishes that the Debtor told Mr. Ostling that he had no secured loans.

Exhibit B is a one-page, unsigned "Fee Schedule" listing all of the possible charges for services that might be rendered to the Debtor by the Ostling Firm. The marked choices for services selected include a $700 basic fee, a $100 charge for one reaffirmation agreement, and a $331 filing fee for total charges of $1131. The handwriting on the document appears to be that of only Mr. Ostling, but Mr. Meyers says that the document shows a representation by the Debtor that he had no secured loans.[1] Exhibit C is part of a legal representation agreement signed by both the Debtor and Mr. Ostling. It again recites the fees and costs to be charged by the Ostling Firm, and, apparently because there is no charge listed for a motion to avoid lien, Mr. Meyers says that the agreement is proof that the Debtor did not disclose the secured debt at issue here.

Exhibit D is described by Mr. Meyers as a worksheet questionnaire. One question on the document is: "Have you sold or transferred property as security

---

[1] Attorney Ostling's handwriting is admittedly on Exhibit A, and his signature is on Exhibit C. His handwriting on Exhibits A and C is very similar to the handwriting on Exhibit B. The Debtor's handwritten signature on Exhibit C is distinctly different.

within the last 2 years?" The answer allegedly written by the Debtor is "N/A." The line above that question asks whether the Debtor consulted with or paid any attorney during the prior 12 months. The Debtor marked the answer to that question also "N/A." But it appears that someone else wrote "US" on the same line—presumably correcting the Debtor's answer because, of course, he had consulted with the Ostling Firm and had paid or was in process of paying legal fees to it.

Exhibit E is described as a "Your Debts" worksheet and contains at least two different handwritings. Mr. Meyers says that the Debtor wrote "Tower Loan" on the document and did not mark that the debt was secured. The document shows, however, that whoever wrote the entry did mark that the debt would not be reaffirmed. That representation was to be marked, according to the printed instructions, only if the debt was secured.

Finally, Exhibit F consists of copies of the Debtor's Schedules D and E/F. The Debtor initialed Schedule D, but the signature page verifying the accuracy of the documents is not attached. Mr. Meyers says that the documents show that the debtor affirmed that Tower Loan was unsecured by listing Tower Loan on Schedule E/F.

Hearing on the Motion for Disgorgement was held December 3, 2019. Assistant UST, Jamie Wiley, appeared for the UST. She argued that the Debtor's attorney had a statutory duty to investigate obvious errors and that he was on inquiry notice that Tower Loan most likely had an avoidable non-purchase money security interest in the Debtor's personal property. She said that it was not the UST's position that attorneys must search every database across the entire

country to check the accuracy of information provided by debtor clients. But she did assert that, when a debtor has a debt to a known small loan or finance company that regularly takes non-purchase money security interests in personal property, a search of the free, easily-accessible website of the Illinois Secretary of State is required. Attorney Wiley said that it took her less than a minute to search the website and find that Tower Loan had filed financing statements dating back over a period of five years evidencing liens on the Debtor's property.

The Assistant UST also pointed out that the original fee disclosure filed by Attorney Meyers said that the $800 fee included motions to avoid liens. Further, the amended fee disclosure filed with the motion to reopen said that the new fee was for the filing of a motion to avoid a judicial lien, even though no such motion had been filed. She asked that Attorney Meyers and the Ostling Firm be ordered to disgorge all, or at least a significant portion, of the $700 charged for filing the motions to reopen and to avoid the lien of Tower Loan.

Attorney Jeffrey Abbott with the Ostling Firm appeared at the hearing saying that he represented the Debtor but actually arguing only on behalf of the Ostling Firm. The Court questioned why Mr. Meyers was not present. Mr. Abbott provided no explanation for Mr. Meyers' absence and admitted several times during the hearing that he had no actual knowledge of the conversations or communications the Debtor had with either Attorney Ostling or Attorney Meyers.

Mr. Abbott said that, in his experience, loan companies with non-purchase money security interests in personal property rarely enforce those liens after borrowers file bankruptcy. He said that, frequently, the property pledged is of little value, inadequately described on the documents, and pledged to multiple

creditors. In addition, he claimed that such creditors rarely pursue the property because, under Illinois law, creditors must file a state court replevin action to obtain an order authorizing repossession of the property, and the fees and costs associated with such litigation can be prohibitive. Mr. Abbott said that the policy of the Ostling Firm is to try to keep costs low for their clients, and the attorneys therefore leave it to the client to decide if filing a motion to avoid lien is worth the extra fees that would be charged. He said that "most likely" the Debtor here "did not think it was worth it."

Under questioning by the Court, Mr. Abbott admitted that he did not actually know that the Debtor here had made an informed choice not to file a motion to avoid the Tower Loan lien when the case was originally open. He agreed that Mr. Meyers had not asserted any such thing in his response. He acknowledged that he and his Ostling Firm colleagues were aware that Tower Loan was the type of lender that generally would take a non-purchase money security interest in personal property, but he could not say that either Mr. Ostling or Mr. Meyers told that to the Debtor. To the contrary, he said, again, that he did not know what their conversations had been. He assured the Court that he would review office policy and make sure that clients are informed of potential liens, even when they deny the existence of such liens, and that the clients are given sufficient information to make informed choices about what legal services to purchase.

In closing, Mr. Abbott said that Mr. Meyers could have brought an action for sanctions against Tower Loan for violating the automatic stay, at presumably no cost to the Debtor, but the Debtor and Mr. Meyers chose to reopen the case

and file the motion to avoid lien. Mr. Abbott did not contend that Mr. Meyers knew of any contacts by Tower Loan to the Debtor before the Debtor received his discharge and the case closed and did not explain why he thought the automatic stay was in force after discharge and the case closing. He also did not explain why Tower Loan's post-discharge contacts—if that was when they were made—relating to enforcement of a security interest would violate the discharge injunction.

After hearing the arguments, the matter was taken under advisement and is now ready for decision.

## II. Jurisdiction

This Court has jurisdiction over the issues before it pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). The allowance of fees to debtors' attorneys is central to the administration of bankruptcy estates and is a core proceeding. 28 U.S.C. §157(b)(2)(A). The fee issue here arises from the Debtor's bankruptcy itself and from the provisions of the Bankruptcy Code and may therefore be constitutionally decided by a bankruptcy judge. *See Stern v. Marshall*, 564 U.S. 462, 499 (2011).

## III. Legal Analysis

The UST asserts, and the Ostling Firm does not deny, that this Court has broad power to review a debtor's financial transactions with his or her attorney and to order disgorgement when fees paid to an attorney are excessive. Attorneys are required to disclose their financial transactions with debtors even when they

are not seeking compensation from the estate. 11 U.S.C. §329(a); Fed. R. Bankr. P. 2016(b). The UST or a debtor may request a court to review fees paid to an attorney after the order for relief to determine whether such fees are excessive. Fed. R. Bankr. P. 2017(b). When fees exceed the reasonable value of the services provided, the fee agreement may be canceled and disgorgement of excessive fees may be ordered. 11 U.S.C. §329(b). Thus, this Court's authority to review the Debtor's transactions with Attorney Meyers and the Ostling Firm is clear.

In the Motion for Disgorgement, the UST says that the fees and costs of $700 charged by Attorney Meyers and the Ostling Firm to reopen the Debtor's case and to move to avoid Tower Loan's lien are excessive because the motion to avoid lien should have been filed when the case was originally open. According to Mr. Meyers and the Fee Schedule attached as an exhibit to his response, the Debtor would have been charged only $100 to file the motion to avoid lien if it had been filed before the case closed. The UST contends that, because the Ostling Firm placed a $100 value on the service, charging the Debtor $700 is excessive. And the UST asserts that the fault for not filing the motion to avoid lien when the case was originally open lies with Attorney Meyers and the Ostling Firm because the need for the motion was obvious or would have been obvious if Mr. Meyers had done even a minimal investigation. Further, Mr. Meyers' original fee disclosure reflected that motions to avoid liens were among the services included in the fee disclosed. Mr. Meyers counters that he was not required to do any investigation into the accuracy of information provided by the Debtor and that he and his colleagues at the Ostling Firm have the right to rely on whatever information debtors provide to them.

Both statutory and case law support the UST's position on the issue, and Attorney Meyers is simply wrong in denying any duty to investigate information provided to him by his clients. Importantly, this is not the first time that the Ostling Firm and its attorneys have been reminded of their statutory duty to investigate and make inquiries into the accuracy of information provided by debtors. *See In re Moffett*, 2012 WL 693362, at *3-4 (Bankr. C.D. Ill. Mar. 2, 2012) (attorney from the Ostling Firm sanctioned when he failed to meet with the debtor, review all information collected by paralegal staff, and investigate the accuracy of the information provided). It is surprising that, even after sanctions were issued in *Moffett*, the Ostling Firm has apparently not instituted proper procedures to comply with the statutory duties imposed on its attorneys.

The UST relies on §707(b)(4)(C) and (D) in support of the assertion that Attorney Meyers had a duty to investigate the information provided by the Debtor before filing the petition in this case. 11 U.S.C. §707(b)(4)(C), (D). The statute provides, in part:

> (C) The signature of an attorney on a petition, pleading, or written motion shall constitute a certification that the attorney has—
>
>> (i) performed a reasonable investigation into the circumstances that gave rise to the petition, pleading, or written motion; and
>>
>> (ii) determined that the petition, pleading, or written motion—
>>
>>> (I) is well grounded in fact; and
>>>
>>> (II) is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law and

> does not constitute an abuse under paragraph (1).
>
> (D) The signature of an attorney on the petition shall constitute a certification that the attorney has no knowledge after an inquiry that the information in the schedules filed with such petition is incorrect.

11 U.S.C. §707(b)(4)(C), (D).

Also pertinent to the inquiry is Federal Rule of Bankruptcy Procedure 9011 which provides, in part:

> (b) Representations to the Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, —
>
> . . .
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Bankr. P. 9011(b)(2), (3).

The rules governing professional conduct of attorneys are also implicated here. The District Court of the Central District of Illinois has adopted the Rules of Professional Conduct as promulgated by the Illinois Supreme Court to govern practice in this District. CDIL-LR 83.6(D). Under those rules, a lawyer may limit

the scope of representation of a client, but only when it is "reasonable under the circumstances and the client gives informed consent." Ill. R. Prof'l Conduct (2010) R. 1.2(c) (eff. Jan. 1, 2010). Further, lawyers must provide competent representation, and that includes "skill, thoroughness and preparation reasonably necessary for the representation." Ill. R. Prof'l Conduct (2010) R. 1.1 (eff. Jan. 1, 2010). Lawyers may not charge unreasonable fees. Ill. R. Prof'l Conduct (2010) R. 1.5(a) (eff. Jan. 1, 2010).

It is clear that, when Attorney Meyers signed the petition in this case, he certified that he had performed a reasonable investigation into the Debtor's circumstances, had determined that the petition was well-grounded in fact, and made an inquiry into the information on the schedules to determine the accuracy of such information. It is also quite clear, however, that, despite that certification, Attorney Meyers did not make any investigation or inquiry into the Debtor's circumstances or the accuracy of the information included on the petition and schedules. He admits that he did no investigation and claims he had no duty whatsoever to do an investigation. Attorney Meyer's position makes the decision here simple. He had a duty, he admits that he did not even try to fulfill his duty, and he must therefore be sanctioned with the disgorgement of fees.

Many courts have found that an attorney's duty under §707(b)(4)(C) and (D) is equivalent to the duty imposed by Bankruptcy Rule 9011, and that duty is "to make a reasonable inquiry as to the circumstances giving rise to the bankruptcy petition and all the facts asserted therein." *In re Beinhauer*, 570 B.R. 128, 136 (Bankr. E.D.N.Y. 2017) (citations omitted). What is a reasonable investigation is reviewed on a case-by-case basis. *Desiderio v. Parikh (In re Parikh)*, 508 B.R. 572,

585 (Bankr. E.D.N.Y. 2014) (citation omitted). But as a minimum, it is clear that an attorney may not just simply rely on information provided by a client without independently verifying publicly available facts. *Beinhauer*, 570 B.R. at 137; *In re Seare*, 493 B.R. 158, 211 (Bankr. D. Nev. 2013). An attorney must investigate any inconsistencies by asking more questions or seeking additional documents. *Id.* "[T]he attorney is the expert and cannot rely upon a client's limited understanding of what constitutes the 'complete' or 'necessary' information that the attorney must have[.]" *Seare*, 493 B.R. at 211.

Attorney Abbott admitted at the hearing that Ostling Firm attorneys are acquainted with Tower Loan and are aware that it and similar entities routinely take non-purchase money security interests in the personal property of borrowers. Exhibit A to Mr. Meyers' response contains a warning to Ostling Firm attorneys interviewing new clients to watch for lien avoidance issues when clients have small loans of the type the Debtor had with Tower Loan. Thus, the information provided by the Debtor that he believed that Tower Loan did not have a lien on his property was inconsistent with the general knowledge of both Attorney Ostling and Attorney Meyers. This is exactly the situation where an attorney's duty to investigate arises and requires the asking of additional questions, the production of the actual loan documents, or consultation of public records. And when, as here, the Secretary of State has a free database that can be searched in less than a minute, it is hard to understand why the Ostling Firm attorneys would not utilize the public website to double-check the information provided.

As set forth above, the Illinois Rules of Professional Conduct require competency and thoroughness. Ill. R. Prof'l Conduct (2010) R. 1.1 (eff. Jan. 1,

2010). The scope of an attorney's representation of a client may be limited only with the informed consent of the client. Ill. R. Prof'l Conduct (2010) R. 1.2 (eff. Jan. 1, 2010). Thus, with respect to the situation here, Attorney Ostling and Attorney Meyers had a duty not only to determine whether Tower Loan had a lien but also to advise the Debtor about avoiding the lien and the consequences of declining to pursue that relief. Only then could the Debtor give the informed consent that the Rules of Professional Conduct require and that Attorney Abbott admitted is required. But the response filed by Attorney Meyers says only that the Debtor told Attorney Ostling that Tower Loan did not have a lien; no suggestion is made that either Attorney Ostling or Attorney Meyers questioned that representation or shared with the Debtor any concern that Tower Loan likely did have a lien even if the Debtor did not recall signing the documents. Attorney Abbott acknowledged that, at a minimum, the likelihood of the existence of such liens must be discussed with debtors. The Court finds that, because of the existence of the free, easily-accessible database, the minimum standard of competency and professional responsibility requires a search of the Illinois Secretary of State's database whenever a debtor has a debt to a financial institution, even if the debtor does not identify the debt as secured.

Contrary to Attorney Meyers' argument, requiring attorneys to verify information through the use of free or modestly priced databases is not oppressive.[2] Attorneys are required under the Code and Rules to investigate and

---

[2] The UST agrees that attorneys are not generally required to do national searches. But conducting modestly-priced searches may simply be a cost of doing business for debtors' attorneys. The UST aggressively seeks disgorgement of fees and costs when Chapter 7 cases are filed for debtors who are ineligible for a discharge due to a previous discharge. 11 U.S.C. §727(a)(8), (9). Although a search of the Public Access to Court

inquire into the information provided by debtors before bankruptcy petitions are filed. 11 U.S.C. §707(b)(4)(C), (D); Fed. R. Bankr. P. 9011(b). Use of public databases is clearly a way for attorneys to comply with their obligations, and it is, frankly, surprising that the Ostling Firm would resist a quick, easy, cheap way of verifying debtor information. Attorney Abbott said at the hearing that the Ostling Firm worked to keep fees and costs low; using a free, easy service to verify information would seem to support that policy.

Attorney Meyers says that, if the Ostling Firm is required to verify information, it will have to charge for that service. There is no dispute that attorneys are entitled to charge reasonable fees for services rendered. But implicit in all attorney-client relationships for debtors filing bankruptcy is the duty of the attorney—the expert—to investigate and inquire into the accuracy of information provided by the client. *Seare,* 493 B.R. at 211; 11 U.S.C. §707(b)(4)(C), (D); Fed. R. Bankr. P. 9011(b). And implicit in all such relationships for cases filed in this District is competency, which includes skill, thoroughness, preparation, and the limiting of the scope of employment only by debtors who are fully informed. Ill. R. Prof'l Conduct (2010) R. 1.1, 1.2 (eff. Jan. 1, 2010). None of the duties or professional obligations that govern practice before this Court can be limited or excused based on an attorney's fee arrangement with a debtor. Put bluntly, attorneys cannot discount their fees and then discount the quality of their legal services. Competent, professional legal representation is required regardless of an attorney's fee arrangement with the client.

---

Electronic Records ("PACER") is not free, many attorneys have figured out that running a client's name through PACER before a case is filed is an appropriate and cost-efficient step to take.

The Ostling Firm may, of course, raise its base price for Chapter 7 bankruptcies if it chooses to do so. Attorney Meyers assumes that doing a quick check of the Secretary of State's website will increase the Ostling Firm's per case costs. But that may not be true. Being able to find out which debtors might need a motion to avoid lien and which debtors might not, for free and in less than a minute, would seem more cost-efficient than asking a debtor multiple times, as Attorney Meyers says was done in this case, and risking that the information provided is wrong.

Here, the problems may have stemmed, at least in part, from the Debtor's lack of understanding of terms like "secured" or "transferred for security." Attorney Meyers does not say that the terms were explained to the Debtor, and the exhibits attached to his response show some confusion on the Debtor's part. The Debtor checked a box saying that he would not reaffirm the debt to Tower Loan even though the instructions said to only answer the question if the debt was secured. He also indicated on a form he filled out as part of his consultation with the Ostling Firm that he had not consulted any attorney or paid or agreed to pay any attorney fees. These mistakes by the Debtor are understandable. It is the duty of the attorney to see the errors and inconsistencies and to inquire, investigate, and correct the information. Attorney Meyers and the Ostling Firm did not do that here, and they wrongly denied their obligations to the Debtor. For these reasons, the full $700 paid by the Debtor to Attorney Meyers for the motion to reopen and to avoid the Tower Loan lien must be disgorged.

### IV. Conclusion

Attorney Meyers and the Ostling Firm owed the Debtor a duty to competently represent him and to do so thoroughly with skill and knowledge. But, even though they knew—as Attorney Abbott admitted—that entities such as Tower Loan routinely take non-purchase money security interests in borrowers' personal property, they failed to fully inform the Debtor about the practice. Instead, they relied on the Debtor's faulty recollection of his transaction with Tower Loan, and that ultimately cost the Debtor $700. The error was compounded by the failure of Attorney Meyers to investigate the information provided by the Debtor, even though he could have done so in a minute's time and for free. And the situation was even further aggravated by Attorney Meyers' wholesale denial of any obligation on his part or that of his Ostling Firm colleagues to comply with the duties imposed on them by the Code and Rules.

This is not a case where Attorney Meyers tried to investigate but failed to uncover an error or where the information could not be verified by any source other than the Debtor. Attorney Meyers did not try and says he did not have to try. He is wrong, and the fees and costs he collected due to his error must be disgorged. An order requiring disgorgement of $700 to the Debtor will be entered.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###